IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**HOLLY R. HARPER,**

      **Plaintiff,**

v.                                     Case No.: 3:24-cv-00276

**PAUL BISER,
CHRISTOPHER DEAN CHILES,
CHARLES AMOS,
DR. HUMPHREYS[1],**

      **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Plaintiff, Holly Harper, proceeding *pro se*, filed a Complaint against Defendants under 42 U.S.C. § 1983 and an Application to Proceed Without Prepayment of Fees and Costs. (ECF Nos. 1, 2). This case is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Currently pending is an initial screening of Plaintiff's complaint and review of her *in forma pauperis* application. For the following reasons, the undersigned **DENIES** the Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 1), and **RECOMMENDS** that

---

[1] Harper's complaint names this Defendant as "Dr. Humphrey." (ECF No. 2 at 3). However, consulting the various medical documents and state court forms Harper provided, it appears the physician's last name is "Humphreys." (ECF No. 2-1 at 5, 16–18). The undersigned directs the Clerk of Court to correct the case caption.

1

the presiding District Judge **DISMISS** the complaint and **REMOVE** this matter from the docket of the Court.

I.     **Relevant History**

Harper's suit relates to an involuntary commitment proceeding which began in May 2021. Harper named as defendants: Paul Biser, Mental Hygiene Commissioner; Christopher Dean Chiles, Cabell County Circuit Court Judge; Charles Amos, Prosecutor; and Dr. Humphreys. (ECF No. 1 at 2–3). Harper attached to her complaint several court documents for the involuntary commitment proceeding, including: the docket entries in the case, (ECF No. 2-1 at 1); the application for her commitment, (ECF No. 2-1 at 2–3); the order for detention, examination, and probable cause hearing, (ECF No. 2-1 at 10); the order finding probable cause, (ECF No. 2-1 at 11); the chief medical officer's application for final commitment, (ECF No. 2-1 at 17); the notice of final commitment hearing, (ECF No. 2-1 at 16); the certificate of licensed examiner, (ECF No. 2-1 at 18, 4–9); and the order/commissioner's recommendation granting final commitment, (ECF No. 2-1 at 14–15). Harper also attached a two-page print out from a law firm website, referencing internet defamation and cyberstalking, (ECF No. 2-1 at 12–13), and a West Virginia court disposition report, showing that multiple criminal charges against her were dismissed. (ECF No. 2-1 at 19). Most of the attached documents are incomplete, and some are out of order.

According to her complaint, Harper was initially examined on May 24, 2021, at St. Mary's Medical Center in Huntington, West Virginia. (*Id.* at 8). Harper's father filed an application for involuntary commitment that day. (ECF No. 2-1 at 2–3). The next day, May 25, an order to detain was filed. (ECF Nos. 1 at 8, 2-1 at 1, 10). According to a record from the Clerk of the Circuit Court of Cabell County, which Harper attached to her

petition, Judge Chiles entered an order finding probable cause on May 27, 2021. (ECF No. 2-1 at 1, 11). A final commitment hearing was held on June 10, 2021. (ECF No. 2-1 at 1, 14). Paul Biser, the Mental Hygiene Commissioner, presided over the hearing, and, after hearing testimony from a physician, he found that Harper was mentally ill and recommended that she be involuntarily committed. (ECF No. 2-1 at 14–15). On June 11, 2021, Judge Chiles granted the final commitment order, committing Harper to St. Mary's Medical Center. (ECF No. 2-1 at 1, 14). Harper does not provide the exact date she was released, but states that she was hospitalized for "29+ days" or "29 +/- days." (ECF No. 2 at 12, 19).

Harper assigns various errors to the involuntary commitment proceedings. She alleges that the application for her commitment was not signed under oath or notarized, rendering the application void. (ECF No. 2 at 13). She states that the application was filed after she was taken into custody by Sheriff's Department officers, but she has no record of an order permitting that act. (*Id.*). She complains that the medical examination relied on improper or false information: "The examiner makes five references to [Harper's] unlawful institutional confinement from January 06, 2020. Makes four references to holding gun under chin. Incorrect. Make [sic] six references to abusing Adderall. Incorrect. Refers to legal infractions that were declared as dismissed." (*Id.* at 13–14). Harper further alleges that she complied with every requirement while she was under observation at St. Mary's Medical Center, and claims that neither Judge Chiles nor Dr. Humphreys had a legitimate reason to commit her following the final commitment hearing. (*Id.* at 15).

Harper also takes issue with the fact that other adults with "personal knowledge" of the facts, including her sister, were not permitted to testify. (*Id.* at 16, 18). Harper

3

complains of various inaccuracies or irregularities with certain court records. She states that the wrong hospital is listed on the notice of final commitment hearing, and that "the dates do not align with the information being conveyed" to her while she was confined at St. Mary's Medical Center. (ECF No. 2 at 17). Additionally, Harper alleges that the application for her commitment was not reviewed by a commissioner or judge, based on the fact that blank spaces on the notice of final commitment hearing were not completed. (*See* ECF Nos. 2 at 17, 2-1 at 16). Harper complains that Dr. Humprheys was acting both as the applicant and her psychiatrist. (ECF No. 2 at 15, 18). Finally, Harper alleges that, although she was confined from May 25 through June 3 for observation, Dr. Humphreys made no references to her behavior during that time frame. (*Id.* at 18). Harper states that Defendants have violated her Second Amendment right to bear arms, her Fifth Amendment right to due process, her Sixth Amendment right to confront witnesses and to competent counsel, her Eighth Amendment right against cruel and unusual punishment, and her Fourteenth Amendment right to equal protection of the laws. (ECF No. 2 at 7).

For relief, Harper asks the Court "to hold the individuals responsible for facilitating an illegal involuntary hospitalization and for compromising [her] constitutional rights." (ECF No. 2 at 20). She states the event has prevented her from working, costing her $400,000. (*Id.*). She further requests "that all legal and mental health records be removed from plaintiff's records (from 2020 thru [sic] 2024) in order to restore damages to plaintiff's characterization." (*Id.*).

## II.   Standard of Review

Pursuant to the provisions of 28 U.S.C. § 1915(e)(2), the court must screen each case in which an individual seeks to proceed *in forma pauperis* (without prepayment of

4

fees and costs). The court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915.

A "frivolous" case has been defined as one which lacks "an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory, *Denton v. Hernandez*, 504 U.S. 25, 31-32 (1992); *Anders v. California*, 386 U.S. 738, 744 (1967). A case lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke*, 490 U.S. at 328. Similarly, a complaint fails to state a compensable claim when, upon viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The court is required to liberally construe *pro se* complaints, such as the one filed in this civil action. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.  Discussion

#### A. Statute of Limitations

Harper filed this suit under 42 U.S.C. § 1983, which provides redress for plaintiffs

5

whose constitutional or civil rights have been violated by persons acting under color of state law. A plaintiff must file a § 1983 action within the prescribed time period. Section 1983 borrows the statute of limitations and tolling rules from the forum state. *Board of See Regents v. Tomanio*, 446 U.S. 478, 484–486 (1980). Although the court applies the state statute of limitations, the accrual date of a § 1983 cause of action is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has stated that the date of accrual is when the plaintiff "knew or had reason to know of the alleged injury." *Ocean Acrs Ltd. Partnership v. Dare Cnty. Bd. of Health*, 707 F.2d 103, 107 (4th Cir. 1985), citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1971). Because the statute of limitations is an affirmative defense, the Court may only dismiss a complaint at the initial screening stage on that basis if it appears on the face of the complaint that the action is time-barred. *See Nasim v. Warden*, 64 F.3d 951, 955 (4th Cir. 1995) (affirming district court's dismissal of complaint on § 1915 review where it appeared on the face of the complaint that plaintiff's suit was untimely).

For § 1983 claims raised in West Virginia, the applicable statute of limitations is the state's general personal injury statute—two years. *Braxton v. Joynes*, No. CIV.A.5:04 0894, 2005 WL 2249865, at *2 (S.D.W. Va., Sept. 15, 2005). Harper acknowledges that she was aware of her injuries at the time,[2] and her claims accrued, in May 2021, when she

---

[2] In one section of her complaint, Harper states that she did not discover a particular fact until February 2024. Harper states,
> "The dates do not align with the information being conveyed to [Harper] while confined on the psych-unit [at St. Mary's Medical Center]. The notice of final commitment hearing is documented as occurring on June 03, 2021, with Dr. Humphrey named as the applicant. [Harper] discovered this fact on February 08, 2024." (ECF No. 2 at 17).

Harper provides no further explanation regarding this alleged error, and there is no apparent legal claim derived from this set of facts.

was involuntarily committed. She had until May 2023 to file suit, and she failed to do so. Therefore, Harper's suit is time-barred. Harper's involuntary commitment raises a question of whether the statute of limitations was tolled under West Virginia Code § 55-2-15(b), which provides that the statute of limitations for personal actions is tolled if the plaintiff is insane at the time the action accrues or shortly thereafter. However, Harper effectively asserts her sanity in the complaint, stating that there was no legitimate reason to commit her following the final commitment hearing. (*See* ECF No. 2 at 15). Indeed, that is the crux of her case—that she was not insane and was wrongfully committed. Other sections of her complaint also convey that she does not believe she was mentally ill during this period.[3] (*See id.* at 11—12) ("While [Harper] complied with every protocol and procedure to ensure she was fine, her complete cooperation had zero influence on those facilitating these efforts to deem [Harper] with suicidal and homicidal ideologies."); (*id.* at 18) ("Any frustration shown by [Harper] is a reflection of this tactic to manipulate [Harper's] existing wellness."). Thus, Harper has foreclosed any argument that the statute of limitations was tolled by insanity.[4] The undersigned **FINDS** that, on the face of the complaint, Harper's action is time-barred and should be dismissed as untimely. Because Harper's action must also be dismissed on the merits, the undersigned will address the substance of Harper's complaint as well.

---

[3] Additionally, in another lawsuit attacking an earlier involuntary commitment proceeding which took place in January 2020, Harper stated that she "was and [is] mentally stable and capable of acting in [her] own best interests as an adult." *Harper v. Magistrate and Circuit Courts of Cabell County*, 3:24-cv-00113, (S.D.W. Va., Mar. 8, 2024), ECF No. 1 at 8.

[4] Further, Harper's involuntary commitment would not by itself establish that Harper was insane within the meaning of the tolling statute. *See O'Neil v. United States*, No. CIV.A. 5:07-0358, 2011 WL 4597362, at *9 (S.D.W. Va., Aug. 2, 2011) (explaining that a person is insane within the meaning of § 55-2-15 if they have "significantly impaired capacity to maintain acceptable levels of functioning in the area of intellect, emotion, and physical well-being."); *Est. of Dearing v. Dearing*, 646 F. Supp. 903, 910 (S.D.W. Va. 1986) (stating that a finding of incompetency did not amount to a finding of insanity that would toll the statute of limitations).

*B. Merits*

**1. Judicial Immunity**

Harper's claims against Judge Chiles must be dismissed, as he is entitled to judicial immunity. As the United States Supreme Court explained in *Mireles v. Waco*, judges possess an absolute immunity from lawsuits seeking damages. 502 U.S. 9, 11 (1991). This common law immunity not only protects judges from the ultimate assessment of damages, but entirely precludes the lawsuit. *Id.* Judicial immunity is broad, and it insulates parties from suit even where the plaintiff alleges bad faith, malice, or corruption. *King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992). The doctrine exists because judges "must be able to exercise discretion vigorously and effectively, without apprehension that they will be subjected to burdensome and vexatious litigation." *McCray v. State of Md.*, 456 F.2d 1, 3 (4th Cir. 1972).

Judicial immunity is only overcome where the challenged actions (1) were nonjudicial, or (2) lacked all jurisdiction. *Mireles*, 502 U.S. at 11–12. In determining whether a challenged act was judicial, courts consider the general nature and function of the act, whether it is normally performed by a judge, and whether the plaintiff dealt with the judge in his or her judicial capacity. *Id.* at 12–13. The only allegations Harper makes against Judge Chiles relate to his role in her involuntary commitment proceedings—that he did not allow Harper to fully express herself during the final commitment hearing, (ECF No. 2 at 16), and that he had no legitimate reason to commit her following the hearing. (*Id.* at 15). These allegations clearly encompass judicial actions, as they concern Harper's involuntary commitment proceedings, which are routinely governed by judicial officers. Judge Chiles also had jurisdiction over the proceedings, as West Virginia circuit court judges have jurisdiction over involuntary commitment proceedings concerning

individuals who reside in or were found in the county in which that court sits. W. Va. Code §§ 27-5-2, 25-5-4. Harper has not established either of the two narrow exceptions to judicial immunity. Therefore, the undersigned **FINDS** that Judge Chiles is immune from suit, and any claims against Judge Chiles must be dismissed.

Judicial immunity also insulates Mental Hygiene Commissioner Biser from suit. Though Commissioner Biser is not a judge, judicial immunity extends to those who perform, "functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). In applying this framework, federal courts have held that commissioners, guardians *ad litem*, and other individuals appointed by the court to perform judicial functions are entitled to judicial immunity. *Davis v. Hudgins*, 896 F. Supp. 561, 570 (E.D. Va. 1995), *aff'd*, 87 F.3d 1308 (4th Cir. 1996). In West Virginia, mental hygiene commissioners are appointed by the chief judge of the circuit court. W. Va. Code § 27-5-1(a). The mental hygiene commissioner is entrusted with conducting inquiries into the mental health of individuals sought to be committed, and the commissioner is responsible for safeguarding the rights and interests of the individual and the state. W. Va. Code § 27-5-1(b)(1). Like a judge, the commissioner has the authority to issue summonses and subpoenas, place witnesses under oath, elicit testimony, and make findings of fact. *Id.* The commissioner must be free to perform these functions without threat of harassment or intimidation from disgruntled respondents. The commissioner's power is checked by the adversarial nature of the proceedings, insulation from political influence, and the right to appeal the circuit court's commitment order. *See Cleavinger,* 474 U.S. at 202 (listing factors to be considered in whether an official is entitled to absolute, as opposed to qualified, immunity). Clearly, mental hygiene commissioners in West Virginia perform functions closely associated with the judicial

9

process, and they are entitled to judicial immunity for actions taken in that role. *See Herzog v. Wiche*, No. 8:07CV498, 2009 WL 995568, at *2 (D. Neb. Apr. 14, 2009) (finding that members of the Nebraska Mental Health Board, who exercise similar duties to WV mental health commissioners, possess absolute immunity from suit). All of Harper's allegations against Commissioner Biser relate to his role as mental hygiene commissioner, and he had jurisdiction over her commitment proceedings, as she resides in Cabell County. *See* W. Va. Code §§ 27-5-2, 27-5-4; (ECF No. 2-1 at 18). Therefore, the undersigned **FINDS** that Commissioner Biser possesses absolute immunity from suit in this case, and Harper's claims against him should be dismissed.

### 2. Absence of Allegations Against Prosecutor Amos

Although Harper named Prosecutor Amos as a defendant, she makes no allegations against him whatsoever in her complaint. (*See* ECF No. 2). A complaint must contain sufficient factual allegations which, accepted as true, allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to proceed under § 1983, a plaintiff must affirmatively show that a defendant acted personally in the deprivation of his constitutional rights, *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977), and when a complaint contains no personal allegations against a defendant, that defendant is properly dismissed. *See Karafiat v. O'Mally*, 54 Fed.Appx. 192, 195 (6th Cir. 2002). Because Harper makes no such personal allegations against Prosecutor Amos, the undersigned **FINDS** her claims against him must be dismissed.

### 3. Claims Against Dr. Humphreys

Unlike the other three named Defendants, Dr. Humphreys is not a state official, but a physician employed by St. Mary's Medical Center, a private hospital located in Cabell

County. (ECF No. 2-1 at 17). This poses a problem for § 1983 liability. To state a claim for relief under § 1983, Harper must show that each defendant deprived her of a constitutional or federal right while acting "under color of state law." Each § 1983 defendant "must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999). Because Dr. Humphreys is a privately employed physician, he may only be sued under § 1983 if his actions could be attributed to the state.

A private party is considered a state actor under § 1983 only if "the deprivation is caused by the exercise of some right or privilege created by the state, and the party charged with the deprivation is a person who may fairly be said to be a state actor." *Gregg v. Ham*, 678 F.3d 333, 340 f.3 (4th Cir. 2012). A person may fairly be said to be a state actor if "he has acted together with or has obtained significant aid from state officials, or [if] his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). For example, a bail bondsman executing a search for a fugitive with the assistance of a police officer is a state actor. *Id.* Harper has not alleged any facts suggesting that Dr. Humphreys was acting with or obtained significant assistance from the state throughout the involuntary commitment process, or that his conduct is otherwise chargeable to the state. Therefore, she has not alleged sufficient facts to establish that Dr. Humphreys could be sued under § 1983.

Supportive of this finding, other federal courts have held that private mental health professionals involved in involuntary commitment proceedings are generally not considered state actors under § 1983. *See Pino v. Higgs*, 75 F.3d 1461, 1466 (10th Cir. 1996) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1008 (1982)) ("[A] state is not responsible

11

for decisions that 'ultimately turn on medical judgments made by private parties according to professional standards that are not established by the State.'"); *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (holding that a private hospital to which the plaintiff was involuntarily committed was not a state actor under § 1983); *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 171 (3d Cir. 2004) (finding that private mental healthcare facility which applied for plaintiff's involuntary commitment was not a state actor); *Spencer v. Lee*, 864 F.2d 1376 (7th Cir. 1989), *cert. denied*, 494 U.S. 1016 (1990) (holding that private physicians acting pursuant to an Illinois involuntary commitment statute were not state actors for purposes of § 1983); *Stewart v. Malone*, No. 3:21-CV-2450-SAL, 2023 WL 3244064, at *2 (D.S.C., May 3, 2023) ("Courts in this district and in many others have found that private hospitals and doctors do not act under color of state law when they participate in involuntary commitments."). Accordingly, the undersigned **FINDS** that Dr. Humphreys was not a state actor for purposes of § 1983 litigation, and Harper's claims against Dr. Humphreys should be dismissed.[5]

Although Harper brings suit under § 1983, some portions of her complaint indicate she may also be attempting to bring a state law claim for defamation. She states that there are false references in the medical examination notes, (ECF No. 2 at 12), and that she has suffered defamation of character. (*Id.* at 19). As a remedy for this alleged injury, she requests the Court expunge all legal and mental health records from 2020 to 2024. (*Id.* at 20). Any defamation claim against Dr. Humphreys is clearly meritless. Under West

---

[5] Harper's complaint against Dr. Humphreys revolves around his role in the competency proceeding: she states that he acted as applicant, chief medical officer, certified licensed examiner, and her primary psychiatrist, and he was unethical for claiming that Harper was delusional about "topics that [were] not being actively introduced." (ECF No. 2 at 18). She also indicates that he did not comment on her compliance during a prior hospitalization. (*Id.* at 10). While the undersigned liberally construes the complaint of a *pro se* plaintiff, these allegations by Harper do not appear to assert any cause of action against Dr. Humphreys which falls within the jurisdiction of this federal court.

Virginia law, a plaintiff alleging defamation must prove, in part, that the allegedly defamatory statements were communicated to a third party who did not have a reasonable right to know. *Belcher v. Wal-Mart Stores, Inc.*, 211 W. Va. 712, 720 (2002); *also Haught v. Fletcher,* 246 W. Va. 424, 429 (2022) (One of the essential elements for a successful defamation action by a private individual is that the alleged defamatory statement was made as part of a nonprivileged communication to a third party) (citation omitted). "Unless the defamatory matter is communicated to a third person there has been no diminution of reputation." *Crain v. Lightner*, 178 W.Va. 765, 772 (1987). Harper alleges that Dr. Humphreys' examination notes contained false and defamatory statements; however, these notes were only communicated to the Circuit Court, which clearly had a right to examine the evidence concerning Harper's mental health. Indeed, as West Virginia's involuntary commitment proceedings are sealed, the only way this information has been publicized to third parties is by Harper attaching documents and discussing her commitment proceedings through this lawsuit. Harper does not allege that Dr. Humphreys made any defamatory statements about her outside of the involuntary commitment proceedings. Therefore, to the extent Harper may be attempting to bring a state-law defamation claim, her complaint fails to state such a claim. Because Dr. Humphreys cannot be sued under § 1983, and because Harper fails to state a claim against him under any other state or federal law, the undersigned **FINDS** Harper's claims against Dr. Humphreys should be dismissed.

### IV. Proposal and Recommendations

For the reasons set forth above, the undersigned the undersigned **DENIES** the Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 1), and **RECOMMENDS** that the presiding District Judge **DISMISS** the complaint and

**REMOVE** this matter from the docket of the Court.

Plaintiff is are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff.

**FILED**: July 16, 2024

_____
Cheryl A. Eifert
United States Magistrate Judge